## American Glucose Co. v. Michael Lavin.

1. MASTER AND SERVANT—*The Master is Not an Insurer.*—The duty of the master is to use ordinary care to provide reasonably safe machinery; he is not an insurer of the safety of the employe.

**Action in Case,** for personal injuries. Trial in the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Reversed. Opinion filed April 11, 1899.

PAGE, WEAD & ROSS, attorneys for appellant.

The master is only required to exercise ordinary care to furnish the servant reasonably safe machinery to work with. It is not required to furnish machinery and appliances of the best character, or that are absolutely safe. Sack v. Dolese, 137 Ill. 132; C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 41; I. C. R. R. Co. v. Sanders, 166 Ill. 278; Camp Point Mfg. Co. v. Ballou, 71 Ill. 421.

When the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, is insufficient to support a verdict for the plaintiff, so that if a verdict be returned it must be set aside, the court is not bound to submit the case to the jury, but may and should direct a verdict for the defendant. Goldie v. Werner, 151 Ill. 556; C. & A. R. R. Co. v. Adler, 129 Ill. 335; Werk v. Ill. Steel Co., 154 Ill. 427.

Foster & Carlock, attorneys for appellee.

When the servant is injured while obeying the orders of his master to do some dangerous work, or perform work in a dangerous manner, the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it. And this is so even though the servant knew that some danger would or might attend his obedience to the order. Ill. Steel Co. v. Schymanowski, 162 Ill. 453; Offutt v. World's Columbian Exposition Co. (Ill.), 51 N. E. Rep. 651; Morris v. Pfeffer, 77 Ill. App. 516; Dallemand v. Saalfeldt (Ill.), 51 N. E. Rep. 645.

Mr. Justice Crabtree delivered the opinion of the court.

This was an action on the case brought by appellee against appellant to recover damages for injuries sustained by him while working in its employment. There was a trial by jury resulting in a verdict in favor of appellee for $3,000. The court overruled a motion for new trial and entered judgment against appellant for $3,063.75, the amount of the verdict, with interest. Appellant brings the case to this court by appeal, assigning many errors. It appears from the evidence that appellant operates an extensive glucose plant in the city of Peoria, in which it used a mechanical contrivance or steam shovel for unloading grain from the cars into the starch house in said plant. At the time of his injury appellee was employed by appellant as a laborer to assist in unloading grain from the cars by means of said steam shovel, and to do other work about appellant's factory. Appellee, at the time in question, was working nights, and, in connection with a fellow-workman, was operating this steam shovel. The declaration alleges that on the 4th day of December, 1896, the said grain shovel and certain ropes and machinery connected therewith, and by means of which it was operated, became defective and out of repair, and were in an unsafe and dangerous condition, which the defendant knew, and negligently failed to keep the shovel and ropes in a reasonably safe condition, and carelessly and negligently operated the same in such defective, unsafe and

dangerous condition. That defendant, knowing such unsafe condition of the machinery, and without informing plaintiff thereof, negligently ordered and directed the plaintiff to use and operate the same to assist in unloading grain from cars. Avers that plaintiff, in the exercise of due care, obeyed the order, and in so doing became entangled in said ropes and machinery and was thrown to the floor and his right leg mangled and broken. The second count alleges substantially the same facts, but further avers that it was the duty of the defendant to provide said shovel, ropes and machinery with a safety clutch, without which said shovel could not be operated with reasonable safety to the employes who had, and were ordered to have, charge of and operate the same. It is further averred that a safety clutch was the usual and proper appliance to turn off the power by which the shovel was operated; that defendant well knew these matters, but negligently failed to provide said shovel with a safety clutch, and negligently compelled plaintiff to use and operate the same without informing him of such failure and the dangers of such use and operation. That by reason of the premises, and while in the line of his duty and in the exercise of due care on his part, plaintiff became entangled in the ropes attached to such shovel, and by reason of the failure to provide such safety clutch was unable to check, control and turn off the power which drove and operated such machinery, and extricate himself therefrom, by reason whereof he had his right ankle and foot broken, etc. From the evidence it seems that the machinery by which the steam shovel was operated was somewhat complicated, and it need not be more particularly described than to say, a rope was attached to the shovel in the car and passed therefrom out of the car door under a pulley on the floor of the platform just outside the car, and from thence under another pulley some distance back in the building, and then up some eight or ten feet to certain machinery upon a shaft which furnished the power. It was so adjusted or arranged that when the shovel had been drawn back to the end of the car and set in the grain and a slack taken on the rope, the

American Glucose Co. v. Lavin.

machinery was thrown into gear and the power applied, which drew the shovel to the door of the car, where the grain was emptied into a sink, and then the machinery was stopped. The rope and shovel were then drawn back to the end of the car by hand, the shovel set in the grain and the operation renewed as before. The slack in the rope was necessary to start the machinery. After the shovel was drawn back, and while the rope was tight, the machinery was out of gear. Appellee had been employed in this same kind of work from July to December, and was entirely familiar with the operation of the shovel and the machinery connected with it. On the Sunday before the accident the old machine was taken out and a new one installed in its place. The operation of the new machine was the same as that of the old, save in two respects : The old machine had a clutch by the use of which the whole machinery could be stopped. The new one did not have this. It was not ordinarily used in operating the shovel, and we think the evidence does not show it was necessary or essential to the safe and successful operation of the machine. This was so for the reason, as we have already stated, that holding the rope tight kept the machine out of gear. The new machine seems to have worked hard, and it was found difficult for the man in the car to pull the shovel back. Commencing on Monday night, the practice was resorted to of having one man go into the room where the machinery was and pull down on the rope when the shovel was to be drawn back, thus aiding the man at the shovel. Appellee and his fellow-workman at the shovel did this each night thereafter, more or less frequently, up to the night between the following Friday and Saturday, when the accident happened. Appellee claims they were ordered to do this, but he nowhere says that he objected or refused to do so. About one o'clock in the morning as appellee was in the room pulling down on the rope as before described, he in some way, not fully explained, stepped into the rope and got his foot entangled in it, and thereupon let go of the rope, thus giving it slack and causing the machinery to be put into gear and start the operation of drawing the

shovel, and appellee, being thus entangled in the rope, was drawn upward by his feet toward the machinery, the same distance the shovel was drawn in the car, and when the shovel reached the car door appellee's weight brought the rope down until he reached the floor. Henry Reynolds, who was the grain weigher of appellant in the plant that night, heard appellee's cries and rushed to his help, and when appellee came down to the floor, instead of holding the rope tight, let it become slack again, while he tried to disentangle appellee's feet; this started the machinery as before; Reynolds also became entangled in the rope and they were both drawn up and let down; and it was on this second occasion that appellee's leg was broken.

It was for the injury thus sustained that this suit was brought.

The evidence fails to show that the machinery was in any way out of repair. The only defect in it was that it worked hard. Having used it continuously for four nights appellee was as well aware of its condition as was appellant. The absence of a clutch was not a defect. If furnished it would not have worked automatically. Reynolds could have stopped the machinery and released appellee by simply holding the ropes tightly in his hands had he retained sufficient presence of mind to do so; or appellee could have stopped it himself by holding the rope tightly when he reached the floor and before he was injured. There is no reason to suppose Reynolds would have had any more presence of mind to operate a clutch than to hold on to the rope. One method of stopping the machinery would have been just as effective as the other so far as we can discover from the evidence. Appellee had known for a week that there was no clutch in the new machine, and had worked without complaint or objection on that account. It is unnecessary to cite authorities to show that under such circumstances the master can not be held liable.

Our conclusion is that the accident happened simply and solely because appellee carelessly allowed himself to become entangled in the rope. It was wholly unnecessary, and he

must have well known, that if he did become thus entangled and then slackened the rope the machinery would start and he would be drawn up with it. Had he kept his feet on the floor the accident could not have happened. Even in the car, if the man operating the shovel allowed his feet to become entangled in the rope he would be very apt to get hurt provided he slackened on the rope.

We think there is an entire lack of proof as to any negligence on the part of appellant, and upon the facts appearing in the evidence, appellee was not entitled to recover. Under these circumstances it is unnecessary to consider alleged errors in the rulings of the court upon evidence and instructions.

The judgment will be reversed, but as we hold appellee can not recover, the cause will not be remanded. Judgment reversed.

**Finding of Facts** to be made a part of the judgment:

We find as a fact that appellee's injury was caused by his negligence and want of care lor his own safety.

We further find as a fact there was no negligence or want of due care on the part of appellant which contributed in any way to cause appellee's injury.